UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RANDY EARL PEARSON,<br><br>　　　　Defendant. | Case No. CR 17-00051-BRO<br><br>**ORDER RE MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |

## I.　　INTRODUCTION

Pending before the Court is Randy Earl Pearson's ("Defendant") Motion to Suppress Evidence and Statements obtained during a traffic stop. (Dkt. No. 18 (hereinafter, "Mot.").) The Court has considered the papers filed in support of, and in opposition to, the instant Motion, as well as evidence presented and the oral argument of counsel at the evidentiary hearing held in this matter on April 25, 2017. For the following reasons the Motion is **DENIED**. This Order supplements the Court's oral ruling on April 25, 2017.

## II.　　BACKGROUND

### A.　　Statement of Facts

Los Angeles Police Department officers Jeff Rivera and Brandon Purece (the "officers") were patrolling an area around 5200 Manchester Boulevard, near a strip

1 | mall called the "Gateway Center."  (Declaration of Brandon Purece (Dkt. No. 21 at
2 | 27) (hereinafter, "Purece Decl.") ¶ 3; *see also* Declaration of Richard Goff (Dkt. No.
3 | 23 at 12), Exs. C–F (photographs of the area).)  Officers Rivera and Purece were
4 | patrolling the area outside of a sports bar because "many people who frequent the
5 | sports bar can be found loitering in the parking lot of the Gateway Center and
6 | consuming alcohol in public prior to entering the bar."  (Purece Decl. ¶ 3.)  As they
7 | were driving through the Gateway Center parking lot, they noticed a black Chevrolet
8 | Cruze ("Cruze"), with license plate number 7PJU030 parked at the east entrance of
9 | the parking lot facing westbound.  (Purece Decl. ¶ 4.)  Because of its position, the
10 | Cruze was partially blocking traffic entering the parking lot from Osage Avenue.
11 | (*Id.*)

12 | The officers turned their car to face the Cruze, at which point they could see
13 | the interior of the car from the passenger side.  (Purece Decl. ¶ 5.)  There was one
14 | man seated in the driver's seat (later identified as Brent Osborne), another man in the
15 | passenger's seat (later identified as Defendant), and a third man in the back
16 | passenger side seat (who the parties do not identify).  (*Id.*)  Officer Purece could see
17 | Defendant reclined in his seat while Mr. Osborne "was leaning to his left, looking at
18 | his lap, and manipulating an object."  (*Id.*)  Though the officers could not see what
19 | was in Mr. Osborne's lap, Officer Purece believed he was rolling a marijuana
20 | cigarette.  (*Id.*)

21 | When another vehicle attempted to enter the parking lot, it had to perform a
22 | three-point turn, causing Officer Purece to believe that the Cruze was violating
23 | California Vehicle Code section 22500 (which, as discussed below, makes it
24 | unlawful to block a driveway).  (Purece Decl. ¶ 6.)  Around the same time, the rear
25 | passenger noticed the officers and said something to Mr. Osborne and Defendant
26 | who "then looked up quickly in [the officers'] direction and appeared very startled
27 | and nervous."  (Purece Decl. ¶ 7.)  Mr. Osborne leaned forward at the waist and
28 | reached towards the floor "as if trying to conceal an object."  (*Id.*)  Officer Purece

believed that the passengers might be engaged in criminal activity. (*Id.*) The Cruze began driving westbound towards the north exit of the parking lot. (*Id.*) As the Cruze was leaving the parking lot, a woman standing outside yelled to the officers, "Y'all need to drive through here more often," and pointed to the Cruze. (Purece Decl. ¶ 8.)

The officers exited the parking lot and caught up to the Cruze before it turned onto Manchester Boulevard. (Purece Decl. ¶ 9.) Once the vehicle turned, Officer Purece activated his emergency equipment, including his emergency lights and siren. (*Id.*) The Cruze did not immediately pull over. (*Id.*) While the officers were following the Cruze, they could see Defendant lean forward towards the floor board and Mr. Osborne lean to his left. (Purece Decl. ¶ 10.) The rear passenger was looking out the back window while speaking to Mr. Osborne and Defendant. (*Id.*) Based on his training and experience, Officer Purece believed that Defendant and Mr. Osborne were hiding a weapon or contraband. (*Id.*)

Eventually, the vehicle pulled over across from 5539 West Manchester Boulevard and the officers ordered the passengers out of the vehicle. (Purece Decl. ¶ 11.) Officer Purece spoke to Mr. Osborne who provided his name and indicated that he was on parole for a felon in possession of a firearm charge and was a 211 Lynwood Crip. (Purece Decl. ¶ 12.) Meanwhile, Defendant informed Officer Rivera that he was on parole for assault with a deadly weapon and was also a 211 Lynwood Crip. (Declaration of Jeff Rivera (Dkt. No. 21 at 39) (hereinafter, "Rivera Decl.") ¶ 4.) Officer Purece searched the vehicle and discovered a blue steel pistol hidden behind the plastic in the vehicle's center console (near the passenger's left leg). (Purece Decl. ¶ 13.) The officers called for an additional unit, then proceeded to photograph the scene and remove the firearm. (Purece Decl. ¶¶ 14–15.)

While searching the vehicle, the officers discovered approximately $420 in counterfeit money in the driver's side door pocket. (Purece Decl. ¶ 17.) Officer Rivera conducted a want/warrant check on the passengers, which returned negative

1 results and spoke to Mr. Osborne's parole officer, Agent Perez-Torres. (Rivera Decl. ¶ 7.) Agent Perez-Torres informed Officer Rivera that Defendant and Mr. Osborne were both on parole, provided a 3056 PC/parole hold, and provided a list of Defendant's convictions. (*Id.*) The officers then brought Mr. Osborne and Defendant back to the police station. (Rivera Decl. ¶ 8.) Upon checking Defendant's rap sheet, they confirmed that he had suffered four convictions: (1) possession of marijuana for sale in violation of California Health and Safety Code section 11359 in 1995; (2) accessory to murder in violation of California Penal Code section 32 in 1996; (3) ex-felon in possession of a firearm in violation of California Penal Code section 12021 in 2000; and, (4) assault with a deadly weapon with a firearm in violation of California Penal Code section 245(A)(2) in 2013. (*Id.*) Accordingly, Defendant was placed under arrest for violation of California Penal Code section 29800(A)(1) as an ex-felon in possession of a firearm. (Rivera Decl. ¶ 9.)

### B. Procedural Background

On January 27, 2017, the Government filed a one-count indictment against Defendant, charging him as a felon knowingly possessing a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Dkt. No. 1.) Defendant filed the instant Motion to Suppress on March 28, 2017. (*See* Mot.) The Government filed its Opposition on April 4, 2017. (*See* Dkt. No. 21 (hereinafter, "Opp'n").) Defendant replied on April 11, 2017. (*See* Dkt. No. 23 (hereinafter, "Reply").)

## III. LEGAL STANDARD

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires a warrant supported by probable cause before law enforcement may search or seize an individual or his belongings. U.S. Const. amend. IV. However, law enforcement may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks

1 probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The level of
2 suspicion required to justify an investigative stop "is considerably less than proof of
3 wrongdoing by a preponderance of the evidence," though the officer "must be able to
4 articulate something more than an inchoate and unparticularized suspicion or hunch."
5 *Id.* (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

6 "The concept of reasonable suspicion, like probable cause, is not 'readily or
7 even usefully, reduced to a neat set of legal rules.'" *Id.* (quoting *Illinois v. Gates*,
8 462 U.S. 213, 232 (1983)). "But the essence of all that has been written is that the
9 totality of the circumstances—the whole picture—must be taken into account. Based
10 upon that whole picture the detaining officers must have a particularized and
11 objective basis for suspecting the particular person stopped of criminal activity."
12 *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

13 "Evidence seized in violation of the Fourth Amendment, including any 'fruit
14 of the poisonous tree,' may not be used in a criminal proceeding against the victim of
15 the illegal search and seizure." *United States v. Cervantes*, 703 F.3d 1135, 1143 (9th
16 Cir. 2012) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487 (1963)).

17 **IV. DISCUSSION**

18 The parties first disagree as to who bears the burden on a Motion to Suppress.
19 Next, the Government argues that Defendant does not have standing to challenge the
20 search of the vehicle, as he was a passenger with no possessory interest in the
21 vehicle. Finally, Defendant argues that, based on the totality of the circumstances,
22 the detaining officers did not have reasonable suspicion that the Cruze or its
23 passengers were participating in criminal activity.

24 **A. Who Bears the Burden on a Motion to Suppress**

25 Defendant's primary argument in his Motion is that because the officers
26 conducted a warrantless search, the Government bears the burden of establishing that
27 the search was lawful. (*See* Mot.) The Government argues that because Defendant
28

brings the Motion, he bears the burden.[1]  (*See* Opp'n at 1.)

"A defendant subjected to a warrantless search and seizure that does not fall within any exception to the warrant requirement may move to suppress that unlawfully obtained evidence at trial."  *United States v. Chong*, No. CR 15-00176-AB, 2015 WL 5156438, at *3 (C.D. Cal. Sept. 2, 2015).  When a defendant moves to suppress evidence found during a warrantless search, "[t]he government has the burden of justifying the seizure under one of a few specifically established exceptions to the warrant requirement."  *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992); *see also United States v. Emens*, 649 F.2d 653, 657 n.6 (9th Cir. 1980) ("By offering no exception to the search warrant requirement which would apply to the search of the warehouse and the blue and white Skipjack, the Government appears to be arguing that the defendant must anticipate and rebut any conceivable theory that might have justified the searches.  This is not the law.  The Government bears the burden in cases of warrantless searches, and at no time does it shift to the defendant.").  Therefore, Defendant is correct that the burden rests upon the Government.  The Government must prove that the search was lawful by a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

### B. Whether Defendant Has Standing

Next, the Government argues that as a passenger with no possessory interest in the Cruze, Defendant lacks standing to challenge the constitutionality of the search.  (*See* Opp'n at 8–11.)  In reply, Defendant clarifies that he does not challenge the constitutionality of the *search* of the vehicle, but of the *stop*.  (*See* Reply at 3.)  Though a passenger "has no reasonable expectation of privacy in a car" in which he

---

[1] Also as a threshold issue, the Government argues that the Court should deny Defendant's Motion because it fails to comply with Local Criminal Rule 12-1.1, which requires a motion to suppress "be supported by a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted."  (Opp'n at 2 (quoting C.D. Cal. L. Crim. R. 12-1.1).)  While a declaration by the Defendant's attorney is insufficient to meet this requirement, because the Court denies Defendant's Motion on the merits, this argument is not dispositive.

has no possessory interest, and therefore, lacks standing to challenge the search of the car, "a passenger may challenge a *stop* of a vehicle on Fourth Amendment grounds." *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (alteration and internal quotation marks omitted) (emphasis added). Thus, "[u]nder *Twilley*, [a] defendant has standing to challenge the legality of the initial traffic stop, and to suppress any fruits of that stop if the initial stop was unlawful." *United States v. Rodriguez*, 100 F. Supp. 3d 905, 919 (C.D. Cal. 2015); *see also United States v. Colin*, 314 F.3d 439, 442–43 (9th Cir. 2002) ("We have held that occupants of a vehicle have standing to challenge on Fourth Amendment grounds an officer's stop of their vehicle even if they have no possessory or ownership interest in the vehicle."). Therefore, Defendant is correct; he has standing to challenge the lawfulness of the stop.[2]

### C. Whether the Officers Had Reasonable Suspicion

Thus, the question becomes whether the officers had reasonable suspicion to stop the Cruze. As noted above, when determining whether an officer had reasonable suspicion to stop a vehicle, the court looks "at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (citation omitted). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short

---

[2] This also means that the threshold question becomes who bears the burden of proof when a defendant challenges a warrantless investigatory stop—not a warrantless search. The Government also bears this burden. *See United States v. Lopp*, 186 F. Supp. 3d 1037, 1040 (N.D. Cal. 2016) (noting that the Government bears burden of establishing lawfulness of warrantless search or seizure when addressing an investigatory stop); *United States v. Cornejo*, 196 F. Supp. 3d 1137, 1147–48 (E.D. Cal. 2016) (same); *see also United States v. Greene*, 826 F. Supp. 314, 315 (D. Ariz. 1993) ("The government has the burden of proving the lawfulness of searches and seizures, and this extends to brief investigatory stops." (citing *United States v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990)).

7

of satisfying a preponderance of the evidence standard." *Id.* at 274.

Here, the officers contend that they developed reasonable suspicion based on several facts: (1) they believed the Cruze was violating California Vehicle Code section 22500 by parking illegally and blocking the entrance to the parking lot of the Gateway Center; (2) they believed Mr. Osborne was rolling a marijuana cigarette; (3) Mr. Osborne and Defendant acted nervously after spotting the officers and immediately driving away; (4) a nearby woman told the officers that the police needed to drive by more often while pointing at the Cruze; (5) the Cruze did not pull over immediately when the officers used their emergency equipment; and, (6) the officers could see Defendant lean forward and reach toward the floor board as they were following the Cruze, which they believed indicated that he was arming himself or hiding contraband. (*See* Opp'n at 13.) Taken together, the Government argues that these facts establish reasonable suspicion. (Opp'n at 13–14.) Defendant argues that these facts do not support reasonable suspicion and that each fact "range[s] from weak to flatly incorrect." (Reply at 4.)

### 1. The Traffic Infraction

An investigatory vehicle stop is lawful when the officer has reasonable suspicion that the vehicle has committed a traffic infraction. *See United States v. King*, 244 F.3d 736, 738 (9th Cir. 2001) (explaining that an officer may "conduct a pretextual traffic stop as a means to uncover other criminal activity" so long as the officer "reasonably suspect[s] a traffic law violation"); *see also United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) ("A traffic violation alone is sufficient to establish reasonable suspicion."). The stop based on a suspected traffic infraction is also lawful even if based on incorrect facts, so long as the error is in good faith and the officer is basing his suspicion on a correct interpretation of the law. *See King*, 244 F.3d at 738 ("[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion." (citing *Twilley*, 222 F.3d at 1096 n.1)). Similarly, the Supreme Court

recently clarified that a traffic stop based on an officer's reasonable mistake of law may also support a finding of reasonable suspicion. *See Heien v. North Carolina*, 135 S. Ct. 530, 540 (2014) ("It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.").

California Vehicle Code section 22500 makes it unlawful to, among other things, park a vehicle "[i]n front of a public or private driveway." *See* Cal. Veh. Code § 22500(e)(1). The chapter of the Vehicle Code containing section 22500 provides that it "refer[s] exclusively to the operation of vehicles upon the highways, unless a different place is specifically referred to." Cal. Veh. Code § 21001; *see also* Cal. Veh. Code § 360 ("'Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street."). Thus, Defendant claims, as the Cruze was parked in the Gateway Center parking lot—private property—it could not have violated section 22500. (*See* Reply at 4–6.)

At the hearing, Defendant presented evidence indicating that the Gateway Center's parking lot is on private property and that Osage Avenue (the road from which the driveway allows access) is, at least in part, a private road. Officer Purece testified that, while he was unaware of who owned the Gateway Center, he assumed it was private property and he understood that he could not write citations for violations of section 22500 on private property.[3] The Cruze was arguably parked "in front of" a private driveway as it was apparently blocking access to the driveway from Osage Avenue used to access the Gateway Center's parking lot. But according to Defendant, section 22500 cannot apply to a car parked on private property blocking access to a driveway from a private road.

---

[3] Officer Purece testified, however, that he believed Osage Avenue was a public road and that he was unaware that it was partially privately owned.

To the extent Officer Purece correctly understood the law—that is, that section 22500 makes it unlawful for a vehicle to block a driveway by stopping on public property—and he had a good faith mistake about the facts—that is, he believed the Gateway Center constituted public property on which a person could be cited for violating section 22500—the suspected section 22500 violation may support a finding of reasonable suspicion. *See King*, 244 F.3d at 739 ("[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion."). Further, to the extent the officers were correct about the facts—that is, that the Cruze was parked in front of a driveway and was blocking access from a public street—but made a reasonable mistake of law—that is, that they reasonably but erroneously believed blocking access to a private lot from a public street constitutes a violation of section 22500—the suspected section 22500 violation may also support a finding of reasonable suspicion. *See Heien*, 135 S. Ct. at 540 (finding reasonable suspicion where an officer reasonably believed that North Carolina law required two working brake lights though the statute was ambiguous and the issue had never been decided by North Carolina's appellate courts).

But neither of these scenarios appear to be the case here. First, there appears to be no good faith mistake of fact. The Government presented no evidence indicating that the officers believed the Gateway Center was public property; rather, at the hearing, Officer Purece testified that he assumed it was private property. In addition, there appears to be no reasonable mistake of law. Officer Purece testified that he understood that section 22500 did not allow for citations on private property. Thus, Officer Purece effectively conceded that he did not understand section 22500 to permit citations in scenarios like that in this case—where a car was blocking a driveway while parked on private property. Therefore, it appears that Officer Purece did not have a reasonable belief that the Cruze had violated section 22500 and he could not base his reasonable suspicion on a suspected section 22500 violation.

//

### 2. Mr. Osborne and Defendant's Conduct After Seeing the Officers

Nonetheless, even discounting the traffic infraction, the additional facts, when taken together, create a "particularized and objective" basis for forming reasonable suspicion that Mr. Osborne and Defendant were participating in criminal activity.[4] Defendant contends that each fact cannot support the officers' reasonable suspicion determination because: (1) the officers could not see what Mr. Osborne was doing in the vehicle and the use of marijuana is legal in California, regardless; (2) it is normal for individuals—even those who are innocent—to be intimidated by and nervous around law enforcement; (3) the Cruze did not drive away immediately upon seeing the officers, but only moved because they were blocking access to the parking lot; (4) the woman's statements were too vague to indicate any wrongdoing; and, (5) the stop had already initiated once the officers followed the Cruze and used their emergency equipment, meaning the officers could not consider any subsequent conduct. (*See* Reply at 6–9.) Defendant's arguments fail. Even if each fact in isolation has an innocent explanation, taken in the aggregate, they support a finding of reasonable suspicion. *See United States v. Diaz-Juarez*, 299 F.3d 1138, 1141 (9th Cir. 2002) ("Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together.").

First, though recreational use of marijuana was largely legalized in California, it remains unlawful to use marijuana while operating a vehicle. *See* Cal. Veh. Code § 23152(f) (making it unlawful to drive while under the influence of a drug); Cal.

---

[4] As explained above, when determining whether there was reasonable suspicion to stop the Cruze, the Court examines the totality of the circumstances. *See Arvizu*, 534 U.S. at 273. Thus, though the Court finds that Officer Purece could not have had reasonable suspicion that the Cruze was violating section 22500, so long as the totality of the remainder of the circumstances justified his belief that criminal activity was afoot, suppression is not warranted. *See United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) ("So long as the facts known to the officer establish reasonable suspicion to justify an investigatory stop, the stop is lawful even if the officer falsely cites as the basis for the stop a ground that is not supported by reasonable suspicion."). Here, as explained further below, in their entirety, the facts known to Officer Purece reasonably supported his belief that the Cruze was participating in criminal activity and justified the investigatory stop, even if the Cruze had not violated section 22500.

Health & Safety Code § 11362.45(a) (noting that nothing in Proposition 64—the Proposition legalizing recreational use of marijuana—makes it lawful to operate a vehicle while under the influence of marijuana). Thus, to the extent the officers believed that Mr. Osborne was utilizing marijuana while in and operating a vehicle, the officers had reasonable suspicion to believe he was committing an infraction.[5]

Further, at the hearing, Officer Purece testified about and reenacted the movement of Mr. Osborne's shoulders and explained that, in his experience, that type of movement often corresponded to the rolling of marijuana cigarettes. According to Officer Purece, the movement of Mr. Osborne's shoulders was consistent with other instances in which he had observed somebody rolling a marijuana cigarette. And while the officers could not see what Mr. Osborne was holding or precisely what he was doing, they need not base reasonable suspicion on direct observations; rather, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). A reasonable suspicion determination may also take into account an officer's experience and training. *See Arvizu*, 534 U.S. at 273. Officer Purece testified that, in his experience, the type of motion or movement of Mr. Osborne's shoulders that Officer Purece witnessed indicated that Mr. Osborne was rolling a marijuana cigarette. This observation supports a finding of reasonable suspicion.

Moreover, Mr. Osborne and Defendant's nervousness and flight upon seeing the officers supports a finding of reasonable suspicion. *See Wardlow*, 528 U.S. at 124 ("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *see also id.* ("Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative

---

[5] Law enforcement need only suspect "criminal activity" is occurring; they do not have to identify exactly what that criminal conduct is before effecting the stop. *See United States v. Palos-Marquez*, 591 F.3d 1272, 1274 (9th Cir. 2010) ("An investigatory stop does not violate the Fourth Amendment 'if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot."'" (quoting *Sokolow*, 490 U.S. at 7)).

of wrongdoing, but it is certainly suggestive of such."). And "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277. Thus, even if there are innocent explanations for Mr. Osborne and Defendant's nervousness and their leaving the parking lot, these explanations do not prevent a finding of reasonable suspicion, particularly when viewed in the totality of the circumstances.

Next, while the woman's statement to the officers did not explicitly indicate that Mr. Osborne and Defendant were acting unlawfully, the court may consider the "inferences reached by experienced, trained officers." *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992). It is reasonable that the officers may have inferred from the woman's statements and her reference to the Cruze that Mr. Osborne and/or Defendant had been participating in unlawful conduct. Further, "reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). Therefore, the woman's statements, combined with the other evidence, support a finding of reasonable suspicion.

In his Reply, Defendant argues that the stop had commenced once the officers used their emergency equipment, but he provides no authority for this proposition. (*See* Reply at 8.) In fact, during argument at the hearing, defense counsel conceded that the law permits the court to consider conduct that occurs after law enforcement has used their emergency lights but before the stop has actually occurred when making a reasonable suspicion determination. Indeed, the Ninth Circuit has held that when deciding whether law enforcement has "suspicion to justify a stop," the court "may take into account all of the events that occur up to the time of physical apprehension of a suspect who flees," including the time between when law enforcement begins an automobile pursuit and when the suspect is physically detained. *United States v. Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992); *see also United States v. Lopez-Ibarra*, 362 F. App'x 677, 678 (9th Cir. 2010)

("[A] seizure did not occur when Peralta turned on his overhead lights and sirens, because Lopez failed to stop. . . . Therefore, the court was free to consider Lopez's subsequent flight from Peralta in its evaluation of whether Peralta had reasonable suspicion to seize Lopez."). Thus, the Cruze's failure to stop once the officers engaged their emergency equipment and Defendant's conduct during the pursuit further support a finding of reasonable suspicion. *See Santamaria-Hernandez*, 968 F.2d at 984 (finding reasonable suspicion based, in part, on the defendant's failure to stop once law enforcement turned on their emergency lights); *see also United States v. Morris*, No. CR 16-1686-TUC-CKJ (LAB), 2017 WL 878437, at *6 (D. Ariz. Mar. 6, 2017) (finding that the defendant's initial failure to stop when the officer used his siren and overhead lights supported finding of reasonable suspicion).

While at the hearing defense counsel argued that it was reasonable that the Cruze pulled over one-tenth of a mile away from the Gateway Center because the area between the Gateway Center and the stopping point had "No Stopping Anytime" signs, the Court finds this argument unpersuasive.[6] Officer Purece testified that he used his emergency equipment including his siren and his colored emergency lights immediately upon the Cruze leaving the Gateway Center parking lot, but that the Cruze initially failed to make any effort to stop or pull over. Officer Purece ultimately used his emergency equipment three times before the Cruze stopped. In addition, Officer Purece testified that it is permissible for a vehicle to pull over in a "no stopping" zone when law enforcement requests it to pull over, that drivers frequently do so, and that the Cruze passed several convenient stopping points that were well-lit and had other parked cars nearby.

Therefore, even if the Cruze only drove for one-tenth of a mile and the area was a "no stopping" zone, the Court finds the fact that: (1) the Cruze failed to slow

---

[6] Moreover, even if this explanation for the Cruze's failure to stop is one possibility, as mentioned above, "[t]here is no need for an officer to rule out an innocent explanation" when determining whether he has reasonable suspicion. *United States v. Valdes-Vega*, 738 F.3d 11074, 1080 (9th Cir. 2013).

14

down or make any effort to pull over once Officer Purece used his emergency equipment; (2) Officer Purece ultimately used his emergency equipment three times before the Cruze stopped; (3) the Cruze passed several safe spots to pull over before stopping; and, (4) other drivers frequently pull over in no stopping zones when pursued by law enforcement, support a finding of reasonable suspicion.[7] *See United States v. Lewis*, No. CR 08-1136-FRZ-JCG, 2009 WL 1856643, at *4 (D. Ariz. June 29, 2009) (determining that where "the occupants of the vehicle were clearly aware" that an officer "was signaling for the vehicle to pull over" but "the vehicle failed to yield" the officer had reasonable suspicion); *United States v. Crowley*, No. S-07-0282 GGH, 2008 WL 686619, at *5–*6 (E.D. Cal. Mar. 12, 2008) (holding that a vehicle's failure to stop and an officer's belief that the vehicle was evading the stop, "for however short a time," supported a finding of reasonable suspicion); *see also United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000) ("Evasive actions contribute to the totality of the circumstances suggesting reasonable suspicion."); *cf. United States v. Griffith*, 762 F. Supp. 2d 1179, 1193 (D. Ariz. 2010) (finding no reasonable suspicion where a car slowed down and pulled over immediately once the officer initiated her emergency lights).

The officers' belief that Defendant was hiding contraband or arming himself while the Cruze was failing to yield also supports reasonable suspicion. Defendant argues that the officers' contention that they could see Defendant lean forwards and appear to hide something during the pursuit is "facially implausible" because they were observing him from the rear of the vehicle at night. (*See* Reply at 8–9.) At the hearing, Officer Purece testified that he could see Defendant through the rear windshield of the vehicle, however, in part because his seat (the front passenger seat) was so far reclined that the headrest could not be seen through the rear windshield

---

[7] The Cruze's failure to stop immediately need not justify the officers' reasonable suspicion on its own; rather, when viewed in the aggregate along with the other facts discussed here, the Court finds that the Cruze's failure to submit to the officers' show of authority supports a finding of reasonable suspicion.

and, therefore, did not obscure his view.[8] While Officer Purece conceded that he could not see what, if anything, Defendant was holding or attempting to hide, as explained above, a finding of reasonable suspicion may be based on the officers' training, experience, and inferences arising from the suspect's conduct. *See Arvizu*, 534 U.S. at 273. Therefore, the Court finds that these observations also support a finding of reasonable suspicion.

In sum, the Court finds that the officers had reasonable suspicion to stop the Cruze. Though the Court finds that the officers could not reasonably have believed that the Cruze violated Vehicle Code section 22500, they had a basis for reasonable suspicion arising from their belief that Mr. Osborne was rolling a marijuana cigarette, Mr. Osborne and Defendant's nervous conduct, their decision to quickly leave the parking lot, the statements made by the nearby woman, the Cruze's failure to stop immediately, and their belief that Defendant had armed himself or was hiding contraband while the officers pursued the Cruze.

**V. CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

IT IS SO ORDERED.

Dated: April 28, 2017

_____
Beverly Reid O'Connell
Judge, United States District Court

---

[8] At the hearing, the Court indicated that it found this testimony credible after observing Officer Purece's demeanor and taking into account the factors enumerated in the Ninth Circuit's Model Jury Instruction on the credibility of witnesses. *See* 9th Cir. Crim. Model Jury Inst. 1.7 (2017 ed.).

16